**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SHAWN THOMAS KALETA,
an individual,

      Plaintiff,

v.                                                                           Case No.:

CITY OF HOLMES BEACH,
a Florida municipal corporation,

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**WITH INJUNCTIVE RELIEF SOUGHT**

      Plaintiff, SHAWN THOMAS KALETA ("Kaleta"), by and through the undersigned counsel, hereby file this Complaint against Defendant, The City of Holmes Beach ("City"), a Florida municipal corporation, and alleges as follows:

**JURISDICTION AND VENUE**

      1.     This is an action for damages and declaratory and injunctive relief with respect to the Plaintiff's real property and civil rights. Plaintiff's alleged deprivation of rights are secured by the Free Speech and Equal Protection Clauses of the First and Fourteenth Amendments as protected by 42 U.S.C. § 1983 and 1988.

      2.     This Court has jurisdiction of this action under, and by virtue of, 28 U.S.C. § 1331, 1343 and 1367.

      3.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the preliminary and permanent injunctive relief requested under Rule 65 of the Federal Rules of Civil Procedure.

1

4. Venue is proper in this District under 28 U.S.C. § 1391(b) on the grounds that some or all of the conduct at issue took place in the Middle District of Florida.

## PARTIES

5. Kaleta owns real property in the City and owns several companies which own property and conduct business within the City.

6. The City is a Florida municipal corporation.

## GENERAL ALLEGATIONS

### PLAINTIFF'S DEVELOPMENT AND VACATION RENTAL EFFORTS AND COMMUNITY INVOLVEMENT

7. Kaleta is a licensed general contractor whose construction company engages in both the rehabilitation of and new construction and operation of residential and commercial properties, including properties utilized as short-term vacation rentals (as that term is defined by Fla. Stat. Chapter 509.242), and has done so for over a decade, with a specific focus on Anna Maria Island ("Island") and other barrier islands. Kaleta also holds ownership interests in several resorts in the City.

8. Kaleta, through various companies, is the sole or majority owner of several properties within the City, including but not limited to:

    a. Bali Hai Beachfront Resort and Spa, 6900 Gulf Drive, Holmes Beach, FL 34217 ("Bali Hai Resort");

    b. Coconuts Beach Resort, 100 73rd Street, Holmes Beach, FL 34217, Units 102, 110, 111, 117, and 118 ("Coconuts");

    c. Islands West Resort, 3605 Gulf Drive, Holmes Beach, FL 34217 ("Islands West");

    d. 305 73rd Street, Holmes Beach, FL 34217; and

2

e.      102 48th Street, Holmes Beach, FL 34217.

9.      Not only is Kaleta a property owner, developer, and contractor on the Island and in the City, Kaleta is also an involved member of his community.

10.     Over the last several years, the City has experienced an influx of construction of new residential structures and remodels of existing residential structures, including those residential properties utilized as vacation rentals. Many of the residential properties constructed and/or remodeled, including a number of the structures constructed by, remodeled by, and/or owned by Plaintiff, either directly or through limited liability companies, are utilized as short-term vacation rentals or hotels.

11.     Even with the multitude of property owners and/or developers doing business in the City and offering nightly short-term rentals, Plaintiff alone has become the focus of the City's attention. The attention that Plaintiff has garnered from the City has created a hostile environment filled with animosity toward Plaintiff. In an effort to combat this general animosity toward himself and his businesses, Kaleta, his agents, and his counsel have actively petitioned the City, including but not limited to, attending City Commission meetings and preparing written correspondences to the City, to approve certain development and/or rental rights that Kaleta has under the City's current rules.

12.     Kaleta hoped that by pursuing his goals though these proper forms of process and clearly explaining his position and intentions when it came to perceived controversial development projects in the City, he would prevent the City Commissioners, City officials, and disgruntled members of the public from perceiving himself and his companies as "bad actors."

13.     The increased animosity by the City against Plaintiff began in 2012, when then-City Commissioner Jean Peelen read into the record at a City Commission meeting a document

3

entitled "Crisis in Holmes Beach," which targeted and personally attacked Plaintiff "for invading Holmes Beach around 2004 and [] transform[ing] it – and not in a good way."[1] This attack, by a City official during a City meeting, directed personally at Plaintiff, clearly demonstrated Commissioner Peelen's, and the City's, general disdain for Plaintiff solely because of Plaintiff's desire to develop properties under the then-current rule that led to the inevitable growth of tourism within the City. Counsel for Plaintiff pleaded with and demanded that the City Attorney advise Commissioner Peelen to refrain from reading this attack into the record at the public meeting, as it directly and personally attacked Plaintiff and would cause a stigma against Plaintiff. The City Attorney refused to do this and now such concern has become a reality.

14. As a direct result of this, the animosity by the City against Plaintiff continued to grow and the City has taken affirmative steps to continue to cultivate the animosity toward Plaintiff, including making a concerted effort to establish an unofficial group, led by City Commissioners, which singles-out Plaintiff's properties, watches those properties, and contacts the City's Code Enforcement officials to report alleged code enforcement violations at Plaintiff's properties.

15. Unfortunately, the animosity felt by various City officials has only increased as City Commissioners, City attorneys, and the Mayor have and continue to make slanderous and false statements regarding Plaintiff. These statements have been specifically directed at the alleged negative impacts of Plaintiff's business on the City and Plaintiff personally. During her tenure on the City Commission, Commissioner Peelen indirectly referred to Plaintiff as the "one main bad actor," "a horror show," and "the dreaded developer".[2] Another Commissioner was caught stealing

---

[1] "Crisis in Holmes Beach"
[2] https://www.sarasotamagazine.com/news-and-profiles/2016/01/51669 "Anna Maria Island's Building Boom Sparks a Civil War"

4

from one of Plaintiff's construction sites and admitted to doing so because Plaintiff needed to be stopped from developing. The City's Mayor, who has never met Plaintiff, stated even if she met him, she "still wouldn't like him" and that Plaintiff needs to prove to her staff that he is a "good citizen," despite other property owners not being held to the same standard. One of the City's code compliance attorneys, Erica Augello, has accused Plaintiff of working on the property located at 305 73rd Street in violation of a red tag, which is simply false, and reported this false information to the City's Magistrate during a public hearing. False statements like this are being used as part of the City's black-ball campaign against Plaintiff.

16.     The animosity directed toward Plaintiff continued to grow until it reached a tipping point during Spring 2020. From Spring 2020 to the present, and more particularly described hereafter, the Mayor and various City officials engaged in a concerted effort to further single out Plaintiff, subjecting him and his properties to arbitrary, malicious, and intentional discrimination, resulting in the unjust delay of Plaintiff's construction projects and hefty daily fines being assessed against Plaintiff's properties, one or more of them, all in an attempt to destroy Plaintiff's business reputation and goodwill.

17.     The actions of the Mayor, Commissioners, and various City officials include, but are not limited to: (1) stalling Plaintiff's development efforts at the Bali Hai Resort; (2) stalling and delaying the approval of site plans and building permits; (3) needlessly requiring and then denying site plan approval for a bar/lounge area at Plaintiff's Bali Hai Resort after discovering Plaintiff's ownership interest in the Bali Hai Resort, which serves as an effective denial of the entire site plan application, and was arguably not required for Plaintiff to obtain; (4) denying Plaintiff's attorney access to code enforcement hearings; (5) overly aggressively filing and prosecuting code enforcement violations against Plaintiff's properties for Plaintiff's use of said

5

properties for, among other things, nightly rentals, despite identical properties not owned by Plaintiff being permitted to utilize their properties as nightly rentals; (6) filing unsupported code enforcement violations against Plaintiff; (7) arbitrarily and capriciously re-interpreting the City's Code to negatively affect Plaintiff and his properties; and (8) failing to respond to Plaintiff's counsel's public records requests. The City does not and has not subjected other property owners or developers who, similarly to Plaintiff, specialize in short-term vacation rentals and hotels, to the same aggressive, malicious, arbitrary and discriminatory requirements that Plaintiff has been forced to deal with over many years. The City has created and cultivated a culture in which the City's officials and staff gain favor with other City officials and staff by singling out Plaintiff and subjecting him to malicious, arbitrary, and discriminatory requirements which are discussed further below.

18.	Many of the above-mentioned actions of the City have been in retaliation for Plaintiff's or his counsel's efforts to defend Plaintiff's constitutionally protected rights. As a result of the City's actions, Plaintiff no longer feels that he can petition the City, outside of this judicial avenue, and achieve a fair and just result.

**PLAINTIFF'S INITIAL CONFRONTATIONS AND LAWSUITS**
**WITH THE CITY OF HOLMES BEACH**

19.	On September 15, 2018, the City adopted Ordinance 15-12, which limited the number of bedrooms permissible in various residential homes, in order to combat and regulate the development and operation of what the City deems as large vacation rental homes.

20.	The adoption of this ordinances created significant financial impacts on Plaintiff's properties, requiring him to file several claims under the Bert J. Harris, Jr. Private Property Rights

Protection Act.[3] The City denied these claims and Plaintiff was then required to pursue such claims in Circuit Court. Begrudgingly, the City ultimately settled with Plaintiff and all of Plaintiff's bedroom claims have now been settled with the City in reasonable favor to Plaintiff after Plaintiff spent years and significant dollars and resources litigating this matter.

21.     Plaintiff's settlements with the City, which were ultimately approved by the City Commission at a September 21, 2021 Shade meeting, afforded Plaintiff the ability to build his homes without being subject to the exact limitation on number of bedrooms in each structure, thus allowing Plaintiff to build the certain sized vacation homes the City had hoped to prevent by the adoption of Ordinance 15-12.[4]

22.     Plaintiff's exercise of his rights under the Bert J. Harris, Jr. Private Property Rights Protection Act have, along with other incidents discussed herein, led the City to retaliate against Plaintiff. Given the timing of the settlement of Plaintiff's bedroom cases, Plaintiff has reason to believe the City has elected to retaliate against him on other matters discussed herein.

**THE CITY ARBITRARILY AND MALICIOUSLY STALLS PLAINTIFF'S DEVELOPMENT EFFORTS AT THE BALI HAI RESORT AND ULTIMATELY STOPS PLAINTIFF'S MAIN ACCESSORY OPERATION AFTER LEARNING ABOUT PLAINTIFF'S OWNERHSIP INTEREST IN SUCH RESORT**

23.     Plaintiff purchased the Bali Hai Resort with an existing bar/lounge which was originally built approximately fifty (50) years ago with the original building.

24.     After Plaintiff's purchase of the Bali Hai Resort, the Plaintiff requested permission from the City to apply for a liquor license for the bar/lounge at Bali Hai Resort, which the City approved because the existing bar/lounge and zoning allowed for this.

---

[3] Fla. Stat. §70.001 (2015).

[4] The actual addresses of the homes subject to the settlements are: 308 56th Street, Holmes Beach, FL 34217; 108 78th Street, Holmes Beach, FL 34217; and 102 77th Street, Holmes Beach, FL 34217.

25. On March 8, 2020, on suspicion that Plaintiff was serving alcoholic beverages to patrons of the bar/lounge who were not guests, the City provided representatives of Bali Hai Resort with a notice of violation, in which the "Corrective Actions" section prevented the service of alcoholic beverages "to anyone **other than guests of the hotel/motel**" until "such time as a site plan is reviewed and approved." Under the City's Code of Ordinances and Land Development Code, a bar/lounge is an accessory use at a hotel/motel located in the A-1 Zoning District. Plaintiff's Bali Hai Resort is located in the A-1 Zoning District and has attempted to continue to use an existing bar/lounge area originally constructed within the Bali Hai Resort at which to serve its guests alcoholic beverages.

26. Thereafter, on March 18, 2020, the City acknowledged in a letter from its' attorney that "the resort [is] in a zoning district within which the operation of a bar that serves alcoholic beverages [is] a permitted use," but retracted its prior position that Plaintiff would be able to sell alcoholic beverages to guests of the Bali Hai Resort and, instead, claimed that Plaintiff was required to submit a site plan approval prior to serving alcohol to **any** person, including guests. The City also offered to come to a compromise with Bali Hai Resort to allow it to serve alcoholic beverages to guests temporarily while site plan approval was pending so the City could determine reasonable restrictions on alcohol sales to all patrons. Plaintiff agreed to do this.

27. On April 1, 2020, pursuant to the offer by the City, Plaintiff's agents, on behalf of Bali Hai Resort and in an effort to further compromise with the City, submitted a site plan to the City.

28. On April 10, 2020, the City rejected the site plan submitted by Plaintiff's agents, and attempted to revoke Plaintiff's ability to serve alcoholic beverages on the property, even to guests.

29. Thereafter, despite Plaintiff's willingness to submit a site plan and work with the City, the City pursued code enforcement violations against the Bali Hai Resort for allegedly selling alcoholic beverages to the public, and also simultaneously filed suit in Circuit Court against Bali Hai Resort on May 21, 2020, seeking remedies far in excess of anything previously sought or discussed, including an injunction to force a total shutdown of the Bali Hai Resort, a step never before taken by the City.

30. Ultimately, as discussed above, at the City's demand, and despite Plaintiff's unwavering belief that, under the City's Land Development Code and Code of Ordinances, no site plan approval was required for the bar/lounge at the Bali Hai Resort, Plaintiff, in late 2020, submitted a revised site plan application for the Bali Hai Resort ("Site Plan Application") which included, among other amenities, a request for approval of a bar/lounge at which to sell alcoholic beverages to guests of the Bali Hai Resort in a further good-faith effort to avoid further issues with the City.

31. Thereafter, the Site Plan Application was highly scrutinized by the City's building officials and was a topic of discussion at three separate work sessions and three separate public hearings. During the workshops, the City's staff recommended approval of the Bali Hai Resort's site plan.

32. At the final work session, the City Commission **unanimously** approved the proposed stipulations related to the operation of the proposed bar/lounge, including hours of operation and that the bar/lounge be permitted to sell alcoholic beverages to guests only.

33. Through the first two public hearings related to the Site Plan Application, no additional issues related to the bar/lounge area were raised by the City Commission or any other City officials. The City's planning department recommended approval throughout the process.

34. A few weeks prior to the final hearing, the City Commission reluctantly approved settlement of Plaintiff's Bert J. Harris, Jr. claims, as discussed above.

35. At the final City Commission meeting, the City Commissioners, one or more of them, inquired, for the first time, about the ownership structure of the Bali Hai Resort, and were informed that Plaintiff holds a majority ownership interest in the Bali Hai Resort. Although the City's planning and code enforcement officials may have been aware of this fact all along, Plaintiff believes the City's Commissioners connected the dots of Plaintiff's majority ownership stake at the final public hearing.

36. Shortly after asking for and learning this information, a break was requested by one of the Commissioners, and upon the Commissioners' return from the break, a noticeable and marked shift occurred immediately by the City's staff and Commissioners upon learning of the Plaintiff's interest in the Bali Hai Resort. The City's planner shockingly then changed his recommendation on the bar/lounge to "borderline" despite previously recommending approval on all fronts and at all times. The City Commission took a quick and immediate vote on the Site Plan Application and, for the first time during the entire Site Plan Application process, voted *unanimously* to *permanently prohibit* the Bali Hai Resort from operating a bar/lounge on its premises, which includes the prohibition of sales of food and alcohol from the bar/lounge. To date, the City still has not provided the reasons for the denial and permanent prohibition of the bar/lounge area and the sale of alcohol and food therein, in violation of its own ordinances which require the City to provide such reason.

37. This decision by the City Commissioners, an effective denial of the Site Plan Application with no reason provided for the *permanent* prohibition on the bar/lounge despite the City Code's requirement to provide same, came a mere ***two weeks*** after City Commissioners

reluctantly approved the settlement of Plaintiff's Bert J. Harris, Jr. claims against the City. This timing and the action taken at the final Site Plan Application hearing speaks volumes about the level of animosity and unjust motives of the City Commission against Plaintiff.

38.     Prior to learning of Plaintiff's majority interest in the Bali Hai Resort and prior to the Bert J. Harris Jr. settlement with Plaintiff, the City Commission gave every indication that the Site Plan Application, including the proposed bar/lounge, would be approved, including offering unanimous approval of the proposed bar/lounge with conditions at the final work session.

39.     The City Commission passed a resolution approving the Site Plan Application with stipulations, including the permanent prohibition on a bar/lounge, which Plaintiff was required to sign in order to move forward with the development of several portions of the Bali Hai Resort. Plaintiff was unwilling to agree to a permanent prohibition on a bar/lounge and, as a result, no site plan is on file with the City.

40.     Without a site plan on file with the City for Bali Hai Resort, the City refuses to issue building permits to Plaintiff for the remaining buildings in disrepair at the resort. This retaliatory action with no basis is very financially damaging to Plaintiff.

41.     The City Commission's arbitrary and malicious reversal of its position related to the bar/lounge area and its refusal to issue building permits without a site plan on file has stalled Plaintiff's development efforts related to the Bali Hai Resort.

42.     The City Commission's arbitrary and malicious decision to permanently prohibit a bar/lounge at the Bali Hai Resort, despite being a permitted and prior accessory use under the City's Code for a hotel/motel in the A-1 Zoning District, are a first, as no other property owner and/or developer specializing in short-term rentals has been subjected to similar denials.

11

43. Angels Nest, LC (also known as Cedar Cove Cottages), was given approval by the City in 2019 to sell alcoholic beverages to its guests from a bar area at its hotel. Despite this approval, which is identical in all relevant respects to Plaintiff's requested sale of alcoholic beverages to guests of the resort in its bar/lounge area, Plaintiff has been permanently prohibited by the City from taking the same action. In fact, Cedar Cove Cottages is located in a *more restrictive* zoning district than Plaintiff's Bali Hai Resort and was still granted approval by the City to sell alcoholic beverages to guests of the resort in its bar/lounge area without controversy.

44. At no time during the work sessions or ahead of the final hearings did the City Commission mention the possible denial of the bar/lounge area as a condition of site plan approval. Had the City raised concerns about the proposed bar/lounge area in the work sessions, Plaintiff would have had an opportunity to amend the Site Plan Application. As a result of the actions taken by the City, Plaintiff is forced to start from scratch and submit an entirely new site plan application. However, such efforts will be futile because of the toxicity of the City as it interacts with Plaintiff.

45. To the extent the City attempts to utilize a commissioner's concern raised at the final hearing that noise is the issue, and the applicant has a bad prior record of noise violations, Plaintiff offers the Ugly Grouper, which serves alcohol and has live music every night of the week until at least 8:00 pm as a comparator. Further, there have been no code enforcement adjudications of noise violations against Plaintiff. This is yet another example of the City's false accusations against Plaintiff in the public forum.

46. Additionally, the City has withheld building permits to the Bali Hai Resort's beachfront building, blaming such withholding on code violations in separate buildings at the resort and because the City was unsatisfied that Plaintiff elected not to record his "approved" site

12

plan for the bar/lounge. The City's action of withholding building permits in relation to the beachfront building has delayed Plaintiff's progress for nearly two (2) years.

47. The actions of the City were done solely to target and harass Plaintiff, subjecting him to onerous requirements that no other property owner, who specializes in short-term rentals, including hotels/motels, has been forced to comply with.

48. It is clear that the City handled the denial of Bali Hai's bar/lounge area in such a way as to sensationalize and garner support for its attacks on Plaintiff's business and properties as City officials have never spoken out against property owners and/or developers who specialize in the short-term rentals, including hotels/motels, in such a negative manner or permanently prohibited the operation or proposed operation of any bar/lounge as an accessory use in any other hotel/motel in the A-1 Zoning District.

49. The damage caused to the Bali Hai Resort as a result of the City's arbitrary and unjust denial of the bar/lounge area exceeds $3,000,000.00.

**THE CITY AND ITS OFFICIALS EXCLUDE PLAINTIFF'S COUNSEL FROM A CODE ENFORCEMENT HEARING, DEPRIVING PLAINTIFF OF A MEANINGFUL OPPORTUNITY TO BE HEARD**

50. On June 11, 2021, Plaintiff's counsel requested a continuance of two (2) City code enforcement hearings scheduled for later the same day after learning that neither the City's code compliance attorney nor its Code Enforcement Magistrate would permit Plaintiff's counsel to appear for the hearing via Zoom, as had been permitted in previous months. The City refused to agree to Plaintiff's counsel's request for Zoom attendance, nor would the City agree to a continuance. The City provided no prior written notice of the decision to cancel Zoom attendance at hearings. The June 11, 2021 hearing utilized Zoom, so it was available for Plaintiff's counsel to

appear that day by that medium. The City simply would not allow it and convinced its Magistrate to agree with its position.

51.     As a result, Plaintiff's Bali Hai Resort went unrepresented at the June 11, 2021 hearings in violation of Plaintiff's due process right to a meaningful opportunity to be heard.

52.     Plaintiff contends that discovery will reveal that at no time has the City prevented any other attorney on behalf of any other property owner or developer accused of City Code violations from appearing at a code enforcement hearing (absent an abuse of requests for continuance, which was not the case here), whether by Zoom or in person.

53.     This unprecedented violation of Plaintiff's due process rights by the City's code compliance attorney and the City's Magistrate was ultimately acknowledged by the City, which filed motions to vacate the fines imposed against Plaintiff's Bali Hai Resort, but not until Plaintiff was forced to incur considerable expense to file an appeal of the violations and fines without a transcript of the proceedings.

54.     As a result of the City's actions, Plaintiff has been damaged in the amount of $25,000.00, including fines and attorney's fees and costs.

## THE CITY'S MAGISTRATE ARBITRARILY AND MALICIOUSLY IMPOSES FINES AGAINST PLAINTIFF'S BALI HAI RESORT WITHOUT PROPER NOTICE

55.     In addition to excluding Plaintiff's counsel from the June 11, 2021 Code Enforcement hearings, the City also requested, and the City's Magistrate imposed, fines against Plaintiff's Bali Hai Resort in the amount of Five Hundred Dollars ($500.00) per day for each of the two alleged violations, for a total of One Thousand Dollars ($1,000.00) per day, despite no notice being provided to Plaintiff that fines would be imposed and/or that the amount of the fine would be considered and determined at the June 11, 2021 hearings.

14

56.     Plaintiff contends that discovery will reveal that at no time has the City ever imposed a fine against any other similarly situated property owner or developer without proper notice.

57.     Although, as discussed above, these fines were ultimately vacated, the City did not move to vacate the fines until after Plaintiff had expended considerable expense in pursuing an appeal, including attorney's fees and court costs.

58.     As a result of the City's actions, Plaintiff has been damaged in the amount of $50,000.00, including fines and attorney's fees and costs.

**THE CITY ARBITRARILY AND MALICIOUSLY IMPOSES FUNDAMENTALLY UNFAIR REQUIREMENTS ON PLAINTIFF AND PREVENTS PLAINTIFF FROM OBTAINING A MEANINGFUL REVIEW OF CODE ENFORCEMENT PROCEEDINGS ON APPEAL**

59.     The June 11, 2021 Code Enforcement Hearing discussed above was not recorded by the City, which prevented Plaintiff from obtaining a meaningful opportunity to be heard on appeal.

60.     Additionally, the City did not record its Code Enforcement hearings in August 2020 and October 2020, wherein the City's Magistrate found Plaintiff's property at 305 73rd Street in violation and assessed fines.

61.     At the City's request, the City's Magistrate required that Plaintiff *obtain site plan approval* by a specific date or fines would be imposed, rather than ordering Plaintiff to *apply* for site plan approval by a specific date for Plaintiff's property at 305 73rd Street and Bali Hai Resort. The requirement imposed by City officials for Plaintiff to *at t* approval in order to avoid fines is fundamentally unfair because the City has complete control over whether to grant site plan approval in a timely manner or at all. Plaintiff contends that the City has not subjected other

15

property owners or developers to similar requirements outside of the developer's control for alleged code enforcement violations or face fines.

62.     Plaintiff filed an appeal of the City Magistrate's decision relating to 305 73rd Street, again without a transcript of the proceedings. Despite Plaintiff's counsel bringing this due process violation to the City's attention at the public hearing, the City declined to vacate the fines, and Plaintiff was forced to file his own motion to reduce the fines, in addition to pursuing appeals to the Circuit Court and to the Second District Court of Appeal in its certiorari capacity. Eventually, the City's Magistrate determined that, despite the due process violations, the fines should only be slightly reduced, not vacated. To settle this matter and clear the title to Plaintiff's property, Plaintiff had no choice but to pay the reduced fines.

63.     Plaintiff contends that discovery will reveal that Plaintiff is the only **alleged** code enforcement violator who must consistently appeal the City's Magistrate's findings of violations and the imposition of code enforcement fines imposed by the City's Magistrate against his properties, and that the City declined to record the June 11, 2021 code enforcement hearings in a concerted effort to, directly or indirectly, prevent Plaintiff from obtaining a meaningful review of the code enforcement proceedings on appeal.

64.     Plaintiff further contends that discovery will reveal that Plaintiff is the only **alleged** code enforcement violator who has been instructed to *obtain* site plan approval by a specific date – which the City has complete control over – or be forced to pay fines to the City.

65.     As a result of the City's actions, Plaintiff has been damaged in the amount of $50,000.00, including fines and attorney's fees and costs.

16

**THE CITY'S ARBITRARY AND MALICIOUS ENFORCEMENT AND PROSECUTION OF CERTAIN RENTAL ORDINANCES AGAINST PLAINTIFF**

66.     On May 19, 2021, the City brought a baseless code enforcement action against Plaintiff's 102 48th Street property for the alleged rental of Plaintiff's property for an improper length of time, despite a glaring lack of evidence. Ultimately, even the City's own Magistrate agreed with Plaintiff that there was a severe lack of evidence and dismissed the charged against Plaintiff, but not until after Plaintiff was forced to employ his attorney to fight these baseless allegations of violation. Despite the complete lack of evidence on the City's part, it still insisted on moving forward with the Code Enforcement hearing, wasting time, resources, and Plaintiff's money.

67.     Plaintiff contends that discovery will reveal that other property owners and/or developers of short-term rentals that rent their properties out in alleged violation of the City's Code of Ordinances have never been pursued as aggressively as the City pursues Plaintiff, and certainly not with the glaring lack of evidence as the City presented against Plaintiff in the case of 102 48th Street.

68.     On or about October 20, 2021, City Code Enforcement hearings were held relating to Plaintiff's Coconuts properties' alleged violations of the City's Code of Ordinances, specifically relating to the nightly rentals of Plaintiff's Coconuts properties.

69.     Plaintiff contested the alleged violations,[5] and the matter was fully briefed by the City and Plaintiff's counsel.

70.     Ultimately, on November 12, 2021, the City's Magistrate unsurprisingly ruled that Plaintiff is not permitted to advertise or rent his Coconuts properties on a nightly basis.

---

[5] As further evidence of the animosity against Plaintiff within the City, the City's Magistrate asked Plaintiff's counsel at such hearing whether he "represents all the violators in the City."

17

71.     Plaintiff contends that discovery will reveal that owners of other units within the Coconuts Beach Resort have been advertising and/or renting their units as nightly rentals for years, and even decades, and have never been served with notice that their nightly rentals violate the City's Code of Ordinances and that these other owners have not been prohibited from advertising and/or renting their units on a nightly basis during the same time periods as Plaintiff's alleged violations. The City simply does not pursue other similarly situated property owners with the same zeal and aggressiveness as it does with Plaintiff.

72.     On or about December 16, 2021, Plaintiff was notified of an alleged ordinance violation for advertising and renting certain units at his Islands West Resort for an improper length of stay (nightly), among other issues.

73.     Islands West Resort is a hotel, and, as such, nightly rentals are authorized by the Code.

74.     Plaintiff further contends that discovery will reveal that the prior owner(s) of Islands West Resort were never subjected to similar City Code violations for renting Islands West Resort on a nightly basis, which has been occurring for decades.

75.     The actions of the City were done solely to target and harass Plaintiff, arbitrarily subjecting him to ordinances that the City has not enforced against other current and/or prior owners within the Coconuts Beach Resort and the Islands West Resort.

76.     The City's actions were taken solely to harass and target Plaintiff, subjecting him to onerous requirements and selectively enforcing ordinances against properties owned by Plaintiff that no other property owners who specialize in vacation rentals have been forced to comply with.

18

**THE CITY'S FAILURE TO RESPOND TO PLAINTIFF'S COUNSEL'S
PUBLIC RECORDS REQUESTS**

77.     On September 16, 2021 and November 30, 2021, Plaintiff's counsel sent requests for public records relating to actions taken by the City against Plaintiff and the Bali Hai Resort. To date, in violation of Florida Statutes Chapter 119, the City has not provided a response to Plaintiff's counsel acknowledging the request for records, nor has the City provided the requested records.

**THE CITY'S APPLICATION OF ITS UNWRITTEN
CUSTOMS, POLICIES, AND PRACTICES**

78.     The foregoing actions of the City and its Officials were taken pursuant to various unwritten, erroneous and inconsistent interpretations of City codes and pursuant to policies and practices promulgated and applied solely to Plaintiff, in an effort to prevent Plaintiff from conducting business as he deems necessary and appropriate.

79.     The unwritten interpretations, policies, and practices include, *inter alia*: (1) stalling Plaintiff's development efforts at the Bali Hai Resort; (2) stalling and delaying the approval of site plans and building permits with no basis to do so; (3) requiring and denying site plan approval for a bar/lounge area at Plaintiff's Bali Hai Resort after discovering Plaintiff's ownership interest in the Bali Hai Resort; (4) preventing Plaintiff's counsel from appearing at code enforcement hearings; (5) filing code enforcement violations against Plaintiff's properties for Plaintiff's use of said properties for nightly rentals, despite identical properties not owned by Plaintiff being permitted to utilize their properties as nightly rentals; (6) filing unsupported code enforcement violations against Plaintiff; (7) arbitrarily and capriciously re-interpreting the Code to negatively affect Plaintiff and his properties; and (8) failing to respond to Plaintiff's counsel's public records requests.

19

80.    As explained above, the City has not and does not apply these requirements, interpretations, and unwritten customs, policies, and practices to other property owners and/or developers who specialize in short-term rentals, including hotels/motels.

81.    It has become increasingly clear, through arbitrary and capricious application and enforcement of the ordinances and building codes and the above comments of the City officials, what the City's true goal is – to curtail Plaintiff's business ventures and injure his business reputation because, among other things, City officials' personal dislike of Plaintiff.

**CONSEQUENCES OF THE CITY'S ARBITRARY AND MALICIOUS ACTIONS**

82.    As described above, the City has clearly engaged in a pattern of discriminatory actions against the Plaintiff, motivated by the City's malice and ill will resulting from: (1) Plaintiff's business ventures, including short-term rentals, and the animosity of the City officials and staff toward this work; (2) the Plaintiff's public speech questioning the motives and actions of the City officials and staff; (3) the Plaintiff's past lawsuits against the City related to the enactment of laws and ordinances aimed to thwart short-term rentals; (4) Plaintiff's requests that the City enforce their ordinances and codes uniformly as to all property owners who engage in the short-term and vacation rental business, including hotels/motels; (5) the City's desire to punish Plaintiff, and (6) for other unknown and arbitrary reasons.

83.    The City's policies and actions against Plaintiff, intended to destroy Plaintiff's business reputation and to harass and frustrate Plaintiff, are all taken in an attempt to prevent and/or curtail future development, remodel, and rental by Plaintiff of short-term vacation rentals and/or resorts within the City.

84.    The City's actions have damaged Plaintiffs. These damages include, but are not limited to: loss of business and profits, loss of customers, the reduction in value of properties

20

currently owned by Plaintiff, costs of attempting to comply with the City's arbitrary and malicious demands; City fines, fees, and liens; impairment to reputation; personal humiliation; mental anguish and suffering; emotional distress; a chill on rights to free speech and to petition government; and costs and attorney's fees of this lawsuit and associated with pursuing various City administrative and judicial remedies which have proved, and continue to be, futile.

85.     The Plaintiffs have retained the undersigned attorneys and are obligated to pay them and their law firm a reasonable fee.

## COUNT I

### CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE FEDERAL CONSTITUTION FOR VIOLATION OF EQUAL PROTECTION OF LAW

86.     Plaintiff repeats and realleges paragraphs 1 through 85 as if fully set forth herein.

87.     This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and seeks equitable relief and damages against the City for violating the Plaintiff's right to equal protection of law guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution.

88.     Here, the City intentionally and arbitrarily treated Plaintiff differently than other property owners and/or developers who specialize in short-term vacation rentals, including hotels/motels, by withholding permits, arbitrarily denying portions of a site plan application with no valid, stated reason, reinterpreting City Code to negatively affect Plaintiff and his properties, excluding Plaintiff's counsel from a code enforcement hearing, imposing fundamentally unfair requirements in connection with code enforcement fines, imposing fines despite lack of proper notice, and preventing Plaintiff from obtaining a meaningful review of code enforcement decisions on appeal.

89. There is no rational basis for the different treatment as the City has arbitrarily and maliciously applied and enforced its facially neutral Codes along with its unwritten customs, policies, and practices unequally to discriminate against Plaintiff.

90. The City's actions violated the Plaintiff's rights to equal protection of law, for which the City is liable.

91. The Plaintiff is being irreparably harmed by the City's unequal and discriminatory application of its ordinances, codes and its unwritten customs, policies, and practices.

92. It is in the public interest to protect owners and operators of businesses that acts and operates in the same manner as other lawful business within the City.

93. Plaintiff has no adequate remedy at law to secure meaningful prospective relief from the City's unequal and discriminatory application and enforcement of its Code and its unwritten customs.

## COUNT II

### CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE FEDERAL CONSTITUTION FOR VIOLATION OF FIRST AMENDMENT RIGHTS

94. Plaintiff repeats and realleges paragraphs 1 through 85 as if fully set forth herein.

95. This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and seeks equitable relief and damages against the City for violating the Plaintiff's right to equal protection of law guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution.

96. The Plaintiff has engaged in protected activity under the First Amendment by petitioning the City and by publicly commenting and filing for redress against the decisions made by the City Commission related to development and vacation rental restrictions.

97. The City has withheld permits, arbitrarily denied portions of a site plan application with no valid, stated reason, reinterpreted City Code to negatively affect Plaintiff and his properties, excluded Plaintiff's counsel from a code enforcement hearing, imposed fines despite a lack of proper notice, imposed fundamentally unfair requirements in connection with code enforcement fines, and prevented Plaintiff from obtaining a meaningful review of code enforcement decisions on appeal.

98. This conduct has deterred Plaintiff from expressing his First Amendment rights.

99. The actions of the City and its officials aimed at Plaintiff have gotten progressively oppressive, as the rhetoric relating to vacation rentals has increased.

100. The City retaliated against the Plaintiff, and the Plaintiff's protected activities were the sole, substantial or motivating cause of the retaliation. The City would not have undertaken its retaliatory actions in the absence of the Plaintiff's protected activities.

101. The City's actions violate the Plaintiff's First Amendment rights to petition government and for free speech, for which the City is liable.

102. Plaintiff is being irreparably harmed by the City's retaliation.

103. It is in the public interest to protect citizens from government retaliation when citizens exercise their constitutional rights.

104. The Plaintiff has no adequate remedy at law to secure meaningful prospective relief from the City's retaliation.

*[Remainder of page intentionally left blank]*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

a)    Trial by jury on all issues so triable;

b)    Render a Declaratory Judgment finding that the City's policies, interpretations, practices, and actions violate the rights of Plaintiff secured by the Free Speech and Equal Protection Clauses of the First and Fourteenth Amendments as protected by 42 U.S.C. § 1983 and § 1988;

c)    Grant Plaintiff injunctive relief ordering the City to cease the unconstitutional and unlawful practices directed at Plaintiff's ability to: be properly notified and represented at code enforcement hearings, be treated fairly at code enforcement hearings, conduct his business, including hotel/motel and short term vacation rentals, in compliance with City Code and without arbitrary interruption by the City; and order the City, their officers, agents, employees, and attorneys to cease from making false and slanderous public statements regarding Plaintiff and his businesses and to record all future code enforcement hearings;

d)    Order the City to engage in affirmative, corrective measures, including but not limited to issuing a public apology for their actions which is to be published in a local newspaper of general circulation;

e)    Enter an Order retaining jurisdiction over this matter until the City has complied with all orders and mandates of the Court;

f)    Award the Plaintiff damages, pre-judgment interest, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

24

g)      Grant such other and further relief as this Court determines to be equitable, just, proper, or necessary under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable.

Dated this 31st day of December, 2021.

Respectfully submitted,

*Michelle A. Grantham*

Michelle A. Grantham, Esq.
Florida Bar No. 1010509
Najmy Thompson, P.L.
1401 8th Avenue West
Bradenton, FL 34205
Telephone: (941) 748-2216
Facsimile: (941) 748-2218
Email: mgrantham@najmythompson.com
Secondary Email: lweaver@najmythompson.com
*Counsel for Plaintiff, Shawn Thomas Kaleta*